UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIEL P. KERSEY,

    Petitioner,

v.                                         Case No. 8:20-cv-35-VMC-AAS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Daniel P. Kersey, a Florida prisoner, timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1) and supporting memorandum of law (Doc. 2). Respondent filed a response opposing the petition. (Doc. 7.) Kersey filed a reply. (Doc. 11.) Upon consideration, the petition is denied.

## Procedural History

A state court jury convicted Kersey of one count of aggravated battery with great bodily harm or a deadly weapon (count one) and one count of grand theft of a motor vehicle (count two). (Doc. 7-2, Ex. 3.) On count one, the trial court sentenced Kersey to 30 years in prison as a habitual felony offender, with a minimum mandatory term of 15 years as a prison releasee reoffender. (*Id.*, Ex. 4.) On count two, the trial court sentenced him to a concurrent term of 10 years in prison as a habitual felony offender. (*Id.*) The state appellate court *per curiam* affirmed the convictions and

1

sentences. (*Id.*, Ex. 5.) The state court denied Kersey's motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Ex. 20; Doc. 7-3, Exs. 21, 23.) The state appellate court *per curiam* affirmed the denial. (Doc. 7-3, Ex. 27.)

## Facts[1]

Janice Fendel allowed numerous individuals who worked on her home, including Kersey, to live there. It appears that Fendel had another property, a mobile home in Palmetto, Florida, where she kept a safe. At approximately 4:00 a.m. on March 19, 2010, Fendel called 911 from her Palmetto mobile home. She told the operator that she needed an ambulance because someone had "busted [her] head open." (Doc. 7-4, Ex. 34, p. 229.) When asked who it was, she named Kersey. (*Id.*)

The 911 operator asked Fendel if Kersey lived with her, and she stated that she had been trying to help him. Fendel responded to the 911 operator's other questions by stating that: the attack happened five minutes prior; Kersey hit her with a tire iron; she could not get her head to stop bleeding, and Kersey took her car, which she described. The 911 operator transferred Fendel's call to the Manatee County Sheriff's Office dispatch. After the transfer, Fendel immediately asked for help, explaining that someone hit her in the head with a tire iron. She was asked questions by the dispatcher, and responded by: naming Kersey; stating that Kersey busted her head open and that she was bleeding all over; stating that he wanted the combination to her safe; and stating that he stole her car five minutes earlier.

---

[1] The factual summary is based on the appellate briefs and trial transcript.

2

Police responded and saw Fendel bleeding from a fresh injury above her left temple. A paramedic noted that Fendel's injuries appeared to be consistent with blunt force trauma. The physician's assistant who treated Fendel at a hospital observed that the lacerations went all the way to her skull and were consistent with blunt force trauma caused by a heavy, thin object.

In recorded jail calls, Fendel told Kersey he had almost killed her. Kersey said he would never hurt her again and talked to her about not pressing charges and avoiding all court dates. Fendel later changed her identification, stating that she was attacked by Tim Mackin, who used to live in her home but with whom she had had disagreements. Mackin denied attacking Fendel.

## Standards Of Review

**The AEDPA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

3

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the judgment and the denial of postconviction relief without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference

4

that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

**Ineffective Assistance Of Counsel**

Kersey alleges ineffective assistance of trial counsel. Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Kersey must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Kersey must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

5

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (stating that this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt."). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## **Exhaustion Of State Remedies; Procedural Default**

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default

which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case in which a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

## Discussion

**Ground One**

Kersey argues that the trial court erred in admitting a recording of Fendel's 911 call, thereby violating his rights under the Confrontation Clause of the Sixth Amendment. He asserts that he was denied an opportunity to confront Fendel because she did not testify at trial. The Confrontation Clause provides that in a criminal prosecution, "[t]he accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, the Supreme Court held that the Confrontation Clause permits "[t]estimonial statements of witnesses

absent from trial . . . only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." 541 U.S. 36, 59 (2004). The Confrontation Clause does not apply to nontestimonial out-of-court statements. *See Whorton v. Bockting*, 549 U.S. 406, 420 (2007) ("Under *Crawford*, . . . the Confrontation Clause has no application" to "an out-of-court nontestimonial statement not subject to prior cross-examination."). If a statement is nontestimonial, its admission "is the concern of . . . rules of evidence, not the Confrontation Clause." *Michigan v. Bryant*, 562 U.S. 344, 359 (2011).

Testimonial statements include those "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 52; *see also Davis v. Washington*, 547 U.S. 813, 822 (2006) (providing that statements are testimonial when "circumstances objectively indicate that . . . the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."). Statements "are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis*, 547 at 822; *see also Bryant*, 562 U.S. at 370 ("[S]tatements made to assist police in addressing an ongoing emergency presumably lack the testimonial purpose that would subject them to the requirement of confrontation.").

In assessing whether a statement is testimonial, a court must "objectively evaluate the circumstances in which the encounter occurs and the statements and

8

actions of the parties." *Id*. Such circumstances include whether the statements were made at the scene of a crime and whether an emergency was ongoing. *Id*. at 360. Determining whether an emergency was ongoing involves considering matters such as whether the threat was directed solely to the victim and was neutralized, or whether there was a continuing threat to the public; the medical condition of the victim; and the degree of formality in the encounter between the victim and police. *Id*. at 363-66.

Further, "the statements and actions of both the declarant and interrogators provide objective evidence of the primary purpose of the interrogation." *Id*. at 367. "The existence of an emergency or the parties' perception that an emergency is ongoing is among the most important circumstances that courts must take into account in determining whether an interrogation is testimonial[.]" *Id*. at 370. "If the information the parties knew at the time of the encounter would lead a reasonable person to believe that there was an emergency, even if that belief was later proved incorrect, that is sufficient for purposes of the Confrontation Clause." *Id*. at 361 n.8.

Kersey argues that any questions asked after the 911 operator learned that "the attacker had left were done in an effort to learn more about past events rather than to assist with an ongoing emergency. As such, the victim's statements provided to the 911 operator in response to said inquiries were both accusatory and testimonial in nature." (Doc. 1, p. 5.) When Kersey raised this claim on direct appeal, the state appellate court rejected it without discussion. Kersey does not show that the state appellate court's decision was unreasonable.

In denying Kersey's motion for judgment of acquittal, in which Kersey argued that the 911 recording's admission violated *Crawford*, the state trial court found that the statements were not testimonial. The trial court found "that it doesn't run afoul of *Crawford* because it was not an interrogation for sole purpose of further use in prosecution." (Doc. 7-4, Ex. 34, pp. 344-45.) The trial court stated that, "[i]n fact, it does indicate that this was for furtherance of an emergency situation, for which they were trying to secure the needs of the person calling in, to protect law enforcement who was responding, and that type of information." (*Id.*, p. 345.)

Kersey has not shown that the state appellate court's affirmance of the trial court's ruling was objectively unreasonable. Fendel called 911 to get help because she was injured; the relevant statements were made during the course of this 911 call, rather than during a formal interview with police. Fendel stated that she was hit in the head only minutes earlier, that she was bleeding, and that she could not stop the bleeding. The questions asked by the 911 operator and the Sheriff's Office dispatcher—including questions such as the attacker's identity, whether he lived with her, if he had left, and if a weapon was involved—can be reasonably interpreted as part of an attempt to assess the nature of the emergency. These questions went to determining whether Kersey was armed and at large, whether he still posed a risk to Fendel, and whether the attack was specifically directed toward Fendel or whether other individuals were also in danger. And while the Sheriff's Office dispatcher asked some similar questions to those posed by the 911 operator after the call was transferred, there is no indication

10

that the Sheriff's Office dispatcher knew the information Fendel initially gave to the 911 operator.

Under these circumstances, the statements on the 911 recording can be reasonably interpreted as nontestimonial statements to assist police in addressing an ongoing emergency. Thus, Kersey fails to show that the state appellate court's decision was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable factual determination.[2] Ground One does not warrant federal habeas relief.

**Ground Two**

Kersey contends that trial counsel was ineffective for failing to fully inform him regarding his case so that he could decide whether to accept a 15-year plea offer, or whether to seek a continuance in the case and proceed to trial. Kersey contends that counsel did not: "explain how the victim's presence in trial was unnecessary and that the State could still convict without her testimony"; "review the circumstantial evidence which could be used to infer his guilt"; "explain the concept of a best interest plea"; or inform him of "a reasonable assessment of the strength of the State's case."

---

[2] To the extent Kersey may intend argue that the trial court erred in finding the 911 recording to be admissible as an excited utterance under Florida's evidentiary laws, his claim involves a matter of state law and does not entitle him to federal habeas relief because he does not show that the recording's admission resulted in a due process violation. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (stating that a federal court's habeas powers do not allow it "to reverse [a] conviction based on a belief that the trial judge incorrectly interpreted" state evidentiary rules); *Taylor v. Sec'y, Fla. Dep't of Corr.*, 760 F.3d 1284, 1295 (11th Cir. 2014) (stating that federal habeas relief "is warranted only when [a state court's evidentiary] error 'so infused the trial with unfairness as to deny due process of law.'" (quoting *Lisbena v. California*, 314 U.S. 219, 228 (1941))).

11

(Doc. 1, p. 7.) Kersey contends that counsel therefore did not provide him "with pertinent details which he would have needed to know in order to make an informed decision while the offer was still available." (*Id.*) Kersey argues that if counsel had "reviewed the State's evidence with him, explained that . . . the victim's absence would not be dispositive, told him about a best-interest plea, and taken the time to play the jail phone calls as he had asked, he never would have requested a continuance and lost a favorable plea offer, but instead, would have accepted it at the July 19, 2010 [pre-trial] hearing and so pled." (*Id.*)

Respondent asserts that Kersey exhausted this claim except for his allegations that counsel never told him the victim's absence at trial would not be outcome-determinative, and did not explain a best interest plea to him. The Court agrees with Respondent's assessment of the claim's exhaustion. The Court will first address the exhausted parts of the claim and will then address the unexhausted parts of the claim.

The state court denied Kersey's claim, which it considered in two sub-parts. The state court denied the first part:

> Defendant claims that trial counsel was ineffective for failing to keep Defendant informed of the evidence against him, the intended defense strategy, and counsel's personal advice. Defendant alleges that this lack of information caused him to reject the State's plea offer and request a continuance. During a hearing held July 19, 2010, Defendant informed the Court that he wanted a new attorney, arguing among other issues that counsel had not met with him to discuss the case. Counsel responded that he had discussed the trial strategy of mistaken identity with Defendant and deposed all witnesses necessary to pursue that strategy, and Defendant had previously indicated that he did not wish to waive speedy trial. Addressing the witnesses that had not yet been deposed, counsel reiterated that many of those witnesses were related to the victim's

12

injuries and were thus immaterial to the trial strategy discussed. Counsel summarized the situation as follows:

> I would point out that I just received the transcripts of the depositions that were taken, and I've just provided him a copy of the victim's deposition transcript. So in one regard at least, he hasn't had a chance to review the depositions at this point. But we have talked about what the testimony might be and what my strategy would be in trial as far as the victim being the primary witness, but there's also some, as we said, taped statements between the victim and my client, jail calls, as well as a 911 call.

Defendant stated that the agreed-upon trial strategy involved mistaken identity, and he was unconcerned about medical witnesses related to the victim's injuries. Accordingly, Defendant's claim that counsel failed to keep him informed of his case is conclusively refuted by the record.

(Doc. 7-3, Ex. 23, pp. 2-3) (state court's footnote omitted).

The state court also denied the second part of Kersey's claim:

Defendant claims . . . that because counsel failed to adequately keep him informed about the case, he was forced to: (a) reject the State's plea offer; and (b) request a continuance and waive his right to a speedy trial.

. . .

Defendant argues that because counsel failed to provide pertinent information about his case, he was forced to request a continuance, thereby affecting several aspects of the proceedings. During a hearing on July 19, 2010, counsel asserted that he had discussed the theory of defense and evidence with Defendant, in addition to deposing all witnesses essential to the defense theory. Nonetheless, Defendant requested a continuance to that counsel could further discuss the case with him. The Court informed Defendant that a continuance would require a waiver of his speedy trial rights, and the State advised him that it would seek habitual felony offender status and higher sanctions if the case was continued. Defendant acknowledged these warnings and persisted in seeking a continuance based on his subjective beliefs about counsel's preparation for his case, despite counsel's statements to the contrary. The Court finds that the continuance at issue was a result of Defendant's subjective beliefs, and the record conclusively refutes

13

> Defendant's claim that it was a result of counsel's failure to prepare the case or keep Defendant informed. Accordingly, the Court denies this claim.

(Doc. 7-3, Ex. 21, pp. 3-4) (state court's footnote omitted).

Kersey does not show that the state court's resolution of his claim was objectively unreasonable. Initially, to the extent Kersey says the state court did not address his claim that counsel's alleged misadvice impacted his decision about pleading, the state court did identify his claim that the alleged ineffective assistance caused him to reject the plea offer. Moreover, the record supports the state court's conclusion that counsel discussed the evidence and the defense with Kersey. As the state court noted, counsel indicated that he deposed the witnesses he believed would be essential, and that he had reviewed evidence and strategy with Kersey. (Doc. 7-4, Ex. 39, pp. 4-5, 7-8.)

Kersey claims that counsel never played the jail calls for him while he still had a chance to take the State's plea offer. However, counsel noted the jail calls when he stated that he had discussed the case with Kersey. (*Id*, p. 8.) Moreover, it appears that the jail calls Kersey refers to were calls between Kersey and Fendel. As a participant in these conversations, Kersey would have been aware of the calls' content. Thus, Kersey does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim.

Kersey contends that the state postconviction court erred in considering his claim as comprising two sub-parts and in not conducting an evidentiary hearing. These arguments are not cognizable on federal habeas review because they present no

14

challenge to the validity of Kersey's conviction. *See Carroll*, 574 F.3d at 1365 ("[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment—*i.e.*, the conviction itself—and thus habeas relief is not an appropriate remedy."); *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's judgment and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief.") (citation omitted).

As addressed, Kersey did not exhaust the parts of his claim alleging that counsel did not explain a best interest plea to him and that he would have accepted the plea if not for counsel's alleged failure to inform him that the victim's absence at trial would be dispositive. Kersey did not specifically raise these portions of the claim in his postconviction motion. (Doc. 7-2, Ex. 20, pp. 10-14.) Kersey does not argue that the fundamental miscarriage of justice exception applies to overcome the default. He instead argues that he has shown cause and prejudice to overcome the default under *Martinez v. Ryan*, 566 U.S. 1 (2012). In recognizing a narrow exception to the rule that an attorney's error in a postconviction proceeding does not constitute cause for a procedural default, the Supreme Court has held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id*. at 17.

To establish cause under *Martinez*, Kersey must demonstrate that the defaulted ineffective assistance of trial counsel claim "is a substantial one, which is to say that [he] must demonstrate that the claim has some merit." *Id.* at 14. A claim is not substantial if it lacks merit or is wholly without factual support. *See id.* at 15-16.

Kersey does not show that the defaulted claim of ineffective assistance is substantial. Initially, his unelaborated claim that trial counsel failed to explain a best interest plea to him is too vague and conclusory to demonstrate that counsel was ineffective and that his defaulted claim is substantial. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a petitioner's "unsupported allegations" that are "conclusory in nature and lacking factual substantiation" cannot sustain an ineffective assistance claim).

Further, Kersey does not establish a substantial claim of ineffective assistance regarding the victim's absence from trial. The record indicates that prior to trial, Fendel was not cooperating with the State and that the State anticipated she might attempt to conceal or deny relevant information. Therefore, the State filed a motion to make Fendel a court witness instead of a prosecution witness. (Doc. 7-3, Ex. 31.) Thus, the possibility that Fendel might not cooperate or appear was apparent. But even assuming that counsel failed to inform Kersey that Fendel's absence would not prevent the State from prosecuting his case, Kersey does not show that this omission amounted to ineffective assistance.

The State provided the jury with Fendel's identification of Kersey through the 911 recording. Although Kersey claims he was "unaware of how the prosecution

16

would be proving its allegations," the record indicates that he knew of this recording. (Doc. 1, p. 7.) At the time of the July 19, 2010 hearing, counsel mentioned on the record several times that the State's evidence included the 911 recording, and he stated that he had discussed the State's evidence with Kersey. (Doc. 7-4, Ex. 39, pp. 4-5, 7-8.) Kersey does not allege that he was unaware of the 911 recording's contents. Thus, Kersey fails to demonstrate that counsel's representation fell outside of the wide range of professionally competent assistance, or a reasonable probability that the outcome would have been different if not for counsel's performance.[3] Since Kersey does not demonstrate applicability of the cause and prejudice exception under *Martinez* to excuse the default of his ineffective assistance of counsel claim, the claim is barred from federal habeas review. Kersey is not entitled to relief on Ground Two.

It is therefore **ORDERED** that Kersey's petition (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Kersey and to **CLOSE** this case.

### Certificate Of Appealability And Leave To Appeal *In Forma Pauperis* Denied

---

[3] Kersey seeks an evidentiary hearing on Ground Two. The Court concludes that an evidentiary hearing is not warranted because Kersey has not shown ineffective assistance of trial counsel for the reasons stated in the body of this order. *See Schriro*, 550 U.S. at 474 (stating that "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing"). Additionally, the Court's ability to receive new evidence to resolve a defaulted ineffective assistance of trial counsel claim is limited. *See Shinn v. Ramirez*, 142 S.Ct. 1718, 1734 (2022) (holding, in the context of a claim defaulted under *Martinez* due to postconviction counsel's alleged ineffective assistance, that "under § 2254(e)(2), a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel").

It is further **ORDERED** that Kersey is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a COA must first issue. *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To obtain a certificate of appealability, Kersey must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Kersey has not made the requisite showing. Finally, because Kersey is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on January 23, 2023.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE